# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Francis and Patricia Dumbuya

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 06-32038

## DECISION AND ORDER

This cause comes before the Court after an Evidentiary Hearing on two related matters: the Motion for Relief From Stay filed by JP Morgan Chase Bank, (Doc. No. 180); and the Debtors' Objection to the Claim of JP Morgan Chase Bank. (Doc. No. 187). At the conclusion of the Hearing, the Court took the matters under advisement so as to afford the opportunity to further consider the issues raised by the Parties at the Hearing. The Court has now had this opportunity and, for the reasons now explained, finds that the Motion for Relief from Stay should be Denied, and that, as provided herein, the Debtors' Objection to Claim should be Sustained.

## FACTS

The circumstances giving rise to the matters before the Court are largely undisputed. JP Morgan Chase Bank (hereinafter the "Creditor") is the holder, by way of an assignment, of a promissory note executed by the Debtors, Francis and Patricia Dumbuya (hereinafter the "Debtors"). The promissory note, in the original amount of $357,000.00, was executed in June of 2000, and is secured by a mortgage against a parcel of real property. From this property, the Debtors operate a business caring for children, with the income derived from this business being the primary source of funds from which the Debtors pay their expenses, including the mortgage.

A number of years after executing the mortgage and promissory note, the Debtors defaulted on the terms of payment to the Creditor. The Creditor, thereafter, commenced a foreclosure action

In re: Francis and Patricia Dumbuya
Case No. 06-32038

against the property securing the note. Prior to the entry of a judgment on the foreclosure action, however, the Debtors, on August 7, 2006, commenced a case in this Court for relief under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1).

During the progression of the Debtors' Chapter 13 case, the Creditor filed an objection to the confirmation of the Debtors' proposed plan of reorganization; the Creditor also filed a motion for relief from stay so as to proceed with its foreclosure action. These actions were based upon the Debtors' failure to make postpetition payments to the Creditor according to the terms of their original agreement. An agreed order was subsequently entered by the Court resolving the Creditor's Motion for Relief from Stay. (Doc. No. 147). The terms of the Agreed Order provided that the Parties were entering into a loan modification and that the Creditor would modify its proof of claim to be a "Principal Balance only Proof of Claim." *Id.*

The Creditor subsequently provided the Debtors with a loan modification agreement, requiring the Debtors to comply with specific payment requirements during what was termed an initial trial period. The proposed agreement then provided that, upon successful completion of the trial period, the principal balance of Debtors' loan would be $530,227.35, and that this loan amount would be amortized into equal monthly payments based upon a completion date in the year 2037 and an interest rate of 6%. This agreement, dated July 30, 2008, was signed by the Debtors, but was never formally executed by the Creditor.

On November 6, 2008, the Debtors' proposed plan, as modified, was confirmed by the Court. (Doc. No. 163). Consistent with the loan modification agreement, the terms of the plan provided that the amount of the Creditor's claim was $530,227.35, and that it would be paid in regular monthly installments of $4,258.66 at the rate of 6%.

Page 2

In re: Francis and Patricia Dumbuya
Case No. 06-32038

On February 5, 2009, the Creditor again filed a Motion for Relief from Stay claiming that its interest in the Debtors' property was not adequately protected because the Debtors had failed to make their regular monthly installments payments from April 20, 2008 through January 31, 2009. (Doc. No. 180). Thereafter, on April 6, 2009, the Debtors filed an objection to the claim of the Creditor alleging that, in contravention to the Parties' Agreed Order, the Creditor had failed to amend their claim to reflect the proper loan amount and the arrearages owed. (Doc. No. 187). These are the two matters which are now pending before the Court.

Regarding the matters before the Court, the Debtors acknowledge that not long after executing the loan modification, they became delinquent by $1,500.00 on their obligation to the Creditor. The Creditor, in turn, acknowledged that, despite the delinquency, it continued to accept payments from the Debtors up until the time it filed for relief from stay, after which it returned all payments tendered by the Debtors. The Debtors represented to the Court that they currently have available the sums due the Creditor since it filed for relief from stay.

The Parties, however, disagree as to the present value of the property securing the Creditor's claim. The Debtors testified that the property is worth approximately $400,000.00; the Creditor, using the value assigned by the county auditor, placed the value of the property at $256,000.00. The Parties also disagree as to the principal balance due on the Creditor's claim. The Debtors contend that they owe the Creditor $530,000.00; the Creditor contends that it is owed $583,000.00.

## DISCUSSION

Before this Court is the Motion for Relief from Stay filed by JP Morgan Chase Bank, and the Debtors' Objection to the Claim of JP Morgan Chase Bank. Motions to terminate the automatic stay and determinations concerning the allowance or disallowance of claims against the estate are deemed by bankruptcy law to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B)/(F). Accordingly, on

In re: Francis and Patricia Dumbuya
Case No. 06-32038

the matters before the Court, this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1). For these matter, the Creditor's Motion for Relief from Stay will be addressed first.

Upon the commencement of a bankruptcy case, an automatic stay arises. 11 U.S.C. § 362(a). The scope of the stay is broad and operates to enjoin essentially any act, whether the commencement or continuation thereof, by a creditor to collect on a prepetition claim. *In re Harchar*, 393 B.R. 160, 167 (Bankr. N.D.Ohio 2008). The automatic stay, however, does not continue in perpetuity, and a party in interest may come before the Court to seek relief from the stay. 11 U.S.C. § 362(c)/(d).

Section 362(d) sets forth four overall grounds under which a creditor may obtain relief from the automatic stay, with the Creditor relying on the first two grounds set forth in this provision. (Doc. No. 180, at ¶ 9). These first two grounds warranting relief from the automatic stay are contained in paragraphs (1) and (2) of § 362(d), and provide:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization[.]

At the Hearing held in this matter, the Creditor particularly placed its focus on the basis for relief provided in paragraph (d)(1) of § 362. Looking first at § 362(d)(2), this position is consistent with the Debtors' continued operation of their business, that of caring for children, from the property against which relief is sought.

Page 4

In re: Francis and Patricia Dumbuya
Case No. 06-32038

Relief from stay under § 362(d)(2) can only be entered when two conditions are met: (1) there is no equity in the property against which the relief is sought; and (2) the property is not necessary to the debtor for an effective reorganization. These dual requirements are read in conjunctive. *In re New American Food Concepts, Inc.*, 70 B.R. 254, 258 (Bankr. N.D.Ohio 1987). For the first requirement, the evidence clearly supports a lack of equity in the Debtors' property, with the Debtors acknowledging that their property is worth no more than $400,000.00 and that they owe on the property at least $530,000.00. The same, however, is not true for the second requirement, the necessity of the property for an effective reorganization.

As applied to § 362(d)(2), the United States Supreme Court defined what it means for property to be "necessary" for a debtor's effective reorganization. In *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, the Court explained: "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." 484 U.S. 365, 376-77, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *In re Matthews*, 229 B.R. 324, 328 (Bankr. E.D.Pa.1999) ("confirmation of a plan basically eliminates any argument that relief is appropriate under § 362(d)(2)"). Within this context, the Debtors' continued possession and use of the property may be viewed as absolutely essential for the implementation of an effective plan of reorganization.

First, the Debtors' income to fund their plan of reorganization is derived almost exclusively from their child care business, a point not controverted by the Creditor. Additionally, the Debtors' plan of reorganization has already been confirmed by the Court, thus affording the plan a judicial finding of feasibility. *See* 11 U.S.C. § 1325(a)(6) (a court can only confirm a plan if it finds that the debtor will be able to make all payments under the plan). In this way, it is recognized that once a plan is confirmed by the court, the necessity of any property retained by the debtor for an effective reorganization is established. *See, e.g., In re Matthews*, 229 B.R. 324, 328 (Bankr. E.D.Pa. 1999) ("[c]onfirmation of a plan basically eliminates any argument that relief is appropriate under § 362(d)(2) because the

Page 5

In re: Francis and Patricia Dumbuya
Case No. 06-32038

movant must prove that the secured property at issue is not necessary to an effective reorganization."). Accordingly, despite the lack of equity in the property against which the Creditor seeks relief, the property's necessity for the implementation of the Debtors' plan of reorganization precludes the Court from lifting the stay pursuant to § 362(d)(2).

The Court now turns to address the primary basis upon which the Creditor seeks relief from stay. In its Motion for relief from stay, the Creditor, citing to § 362(d)(1), set forth that relief is warranted because, having defaulted on their obligation to make all periodic payments as they became due, the Debtors failed to adequately protect its lien interest in the property. (Doc. No. 180, at ¶ 9).

Section 362(d)(1) mandates that a court must accord relief from the automatic stay to any party who establishes "cause" for the relief. As put forth by the Creditor, § 362(d)(1) defines "cause" to include a lack of "adequate protection" of a party's interest in property. As a matter of law, therefore, a finding that a creditor's interest is not adequately protected entitles the creditor to relief. *In re Rosario*, 402 B.R. 223, 232 (Bankr. N.D.Ohio 2009).

On the issues of "adequate protection" and "cause" to lift the automatic stay, the party opposing the relief, here the Debtors, bears the ultimate burden of proof to establish that the requested relief is not warranted. 11 U.S.C. § 362(g)(2). Adequate protection of a party's interest in property is commonly made in the form of periodic cash payments. 11 U.S.C. § 361(1). In this regard, it is the Creditor's position that the Debtors failed, beginning in April of 2008 and continuing up through January of 2009, to make such cash payments, thereby depriving it of "adequate protection" and providing "cause" to lift the stay. The Debtors, while acknowledging a default in payment under their plan, contend that their default was minor, amounting to a missed payment of $1,500.00.

A debtor's failure to make periodic cash payments may constitute, and commonly forms, the basis for a creditor's assertion that "cause" exists to relieve the automatic stay based upon a lack of

Page 6

In re: Francis and Patricia Dumbuya
Case No. 06-32038

adequate protection. *In re Nichols*, 440 F.3d 850, 856 (6th Cir. 2006). Strictly speaking, however, adequate protection is only intended to protect a creditor during the period between the filing of the petition and plan confirmation. *In re Walters*, 203 B.R. 122, 123-24 (Bankr. S.D.Ill. 1996). Once, as here, a plan is confirmed by the court a creditor seeking relief from the stay, based upon a debtor's default in payment under a plan, must establish that the debtor's breach of the plan, itself, provides "cause" to lift the stay. The issue of "adequate protection" becomes moot. As this Court previously explained:

> The goal in a Chapter 13 bankruptcy is to formulate a plan of reorganization. Once a plan is formulated and then confirmed by the court, its provisions are final and binding — § 1327(a) sets forth that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." It follows then, that once a plan is confirmed, "cause" for relief from stay must be based upon postconfirmation circumstances, such as a default by the debtor under the terms of the plan.

*In re Shultz*, 325 B.R. 197, 201 (Bankr. N.D.Ohio 2005).

All the same, whether arising from a lack of adequate protection or a breach of a debtor's plan, the circumstances giving rise to a finding of "cause" so as to warrant relief from the stay under § 362(d)(1) often run parallel. It is thus recognized that, as with the failure to make periodic cash payments, a debtor's postpetition default in payment(s) under a plan of reorganization may constitute, and commonly forms, the basis for a creditor's assertion that "cause" exists to relieve the automatic stay under § 362(d)(1). *In re Oare*, 181 B.R. 16, 19 (Bankr. N.D.N.Y. 1995). This is particularly true where, as is the situation here, the property against which relief is sought is worth less than the debt secured against the property, thereby depriving the creditor of an equity cushion.

Notwithstanding, unlike the situation where adequate protection is found to be lacking, according relief from the stay based upon a postpetition default in payment under a confirmed plan is

Page 7

In re: Francis and Patricia Dumbuya
Case No. 06-32038

not automatic. *In re Nichols*, 440 F.3d 850, 856 (6th Cir. 2006). *See also*, *In re Avila*, 311 B.R. 81, 83 (Bankr. N.D.Cal. 2004) (debtor's postpetition defaults may constitute "cause" for relief from stay; however, this is not a per se rule that must be applied in vacuum). Instead, where there exists a default in payment under a confirmed plan, bankruptcy courts in this Circuit are, prior to modifying or lifting the stay, required to "weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default."*In re Nichols*, 440 F.3d at 856.

Under this inquiry, where the postpetition default under a plan is not found to be material, relief from the automatic stay is not ordinarily warranted. *In re Matthews*, 229 B.R. 324, 328 (Bankr. E.D. Pa. 1999) (a brief lapse in performance of plan terms which protect creditor does not always justify relief from the automatic stay for that creditor). As recently put forth by another bankruptcy court, the "terms of the plan as confirmed fix the legal rights of the parties and the only cause for relief from the stay after confirmation is the debtor's material failure to adhere to the payment terms set forth in the plan." *In re Lemma*, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008). Considerations relevant to whether a breach is material may take into account whether the payment difficulties encountered by the debtor were of brief duration, and whether the debtor has the willingness and the current means or near-present ability to cure the default to the secured creditor. *In re Crowley*, 258 B.R. 587, 592 (Bankr. D. Vt. 2000); *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008). The evidence presented in this case track these considerations favorably for the Debtors.

The Debtors in this matter, while clearly defaulting on their plan, stand ready to cure their default and to comply with the terms of their plan on a forward going basis. The evidence presented in this case also supports the Debtors' position that their default was, relatively speaking, minor, consisting of an arrearage of just $1,500.00, with the Debtors otherwise complying (or standing ready to comply) with their obligation to make monthly periodic payments to the Creditor of $4,258.66. Other considerations also mitigate against lifting the stay.

Page 8

In re: Francis and Patricia Dumbuya
Case No. 06-32038

First, the evidence in this case shows that the Debtors acted in good faith, repeatedly attempting to contact the Creditor regarding their obligations, but that the Creditor did not, to say the least, go to any great lengths to facilities the process. In addition, to ensure that problems in communication will be minimized in the future, the Debtors have also proposed to pay their obligation to the Creditor through the Chapter 13 trustee, a practice strongly encouraged by the Court. Finally, the issue of waiver arises in this case, with the evidence showing that even upon the Debtors' default, the Creditor continued to accept plan payments from the Debtors, with the Creditor only refusing to accept payments when it filed for relief from stay in February of 2009, long after the initial default occurred.

In opposition to all these points, the Creditor largely relied on the fact that it did not execute the loan modification it had provided to the Debtors. In essence, the Creditor maintains that since it never formally agreed to the loan modification, it cannot be held to its terms. This argument, however, is a red herring.

The argument's first shortcoming is simply one of equity. Having provided the agreement to the Debtors in accordance with an agreed order entered by the Court in this case, it is disingenuous for the Creditor to now seek to disavow the agreement for no other reason other than it never formally executed the agreement. Particularly, no substantive reason was offered by the Creditor concerning why, after agreeing in principle to the terms of the agreement, it later found the terms to be deficient. Even placing this weakness aside, however, the Creditor's position has a more fundamental flaw.

On November 6, 2008, the Debtors' proposed plan, as modified, was confirmed by the Court, with no objection being filed by the Creditor. The terms of the plan provided that the amount of the Creditor's claim was $530,227.35, and that it would be paid in regular monthly installments of $4,258.66 at the rate of 6%. These terms of the Debtors' plan are binding upon the Creditor, notwithstanding any deficiency in the execution of the Parties' proposed loan modification. 11 U.S.C. § 1327(a).

Page 9

In re: Francis and Patricia Dumbuya
Case No. 06-32038

Put simply, the terms of a confirmed plan will control over any previous agreement executed, or as in this matter not executed, by Parties. As the Bankruptcy Appellate Panel for the Sixth Circuit explained: "An order confirming a Chapter 13 plan is res judicata as to all [justiciable] issues which were or could have been decided at the confirmation hearing. Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan." *Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004).

In sum, even assuming that the Parties' loan modification agreement is unenforceable, the Creditor is still bound by the terms of the Debtors' confirmed plan. Moreover, since, as already explained, the Debtors' default in payment under the terms of their plan is not material, and with the Debtors having the means by which to cure the default, the Court cannot find that "cause" exists to relieve the automatic stay pursuant to § 362(d)(1).

The final issue before the Court is the Debtors' objection to the Creditor's proof of claim. Here, as before, the Court finds the terms of the Debtors' confirmed Chapter 13 plan to be dispositive. In their Chapter 13 plan, as confirmed by the Court, it was set forth that the amount of the Creditor's claim was $530,227.35. This amount shall be deemed controlling as of the date of plan confirmation, November 6, 2008.

As for a present balance on the Creditor's claim, such an amount cannot be ascertained until the Creditor properly credits those payments tendered by the Debtors, but later returned. As a procedural matter, therefore, the Court will require the Creditor to accept those payments the Debtors had tendered for payment and, with due allowance made for the $1,500.00 arrearage, such payments shall be applied to its claim. In applying these payments to its claim, the Creditor shall, based upon the Debtors' confirmed plan, amortize the payments based upon a loan completion date in the year 2037 and an interest rate of 6%. An amortization schedule shall, as soon a reasonably possible, be provided to the Debtors for their review.

Page 10

In re: Francis and Patricia Dumbuya
Case No. 06-32038

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Creditor, JP Morgan Chase Bank, for Relief From Stay, be, and is hereby, DENIED.

*IT IS FURTHER ORDERED* that, consistent with this Court's decision, the Debtors' Objection to the Claim of JP Morgan Chase Bank, be, and is hereby, SUSTAINED.

*IT IS FURTHER ORDERED* that the Creditor, JP Morgan Chase Bank, shall be required to accept from the Debtors those payments previously rejected and to continue to accept timely payments on a forward going basis.

*IT IS FURTHER ORDERED* that upon receiving those payments previously rejected, the Creditor, JP Morgan Chase Bank, shall credit those payments to its claim and to thereafter timely provide the Debtors with an amortization schedule reflecting said payments.

Dated: December 10, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 11

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Decision and Order has been sent this 10th day of December, 2009 by ordinary US Mail to the following:

Francis and Patricia Dumbuya
2305 Applewood
Toledo, OH 43615

Joseph J Urenovitch
PO Box 2867
Whitehouse, OH 43571

Christian E. Niklas
Shapiro, Van Ess, Phillips & Barragate
4805 Montgomery Road
Suite 320
Norwood, OH 45212

John P. Gustafson
Office of the Chapter 13 Trustee
316 N. Michigan St.
#501
Toledo, OH 43604

/s/ Sherry Heyman, Deputy Clerk